T.C. Memo. 2001-153

UNITED STATES TAX COURT

MICHAEL A. MCCANN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10416-99.                    Filed June 27, 2001.

Michael A. McCann, pro se.

<u>Gordon P. Sanz</u> and <u>Lance Stodghill</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of
$177,929 in petitioner's Federal income tax for 1996 and a
penalty of $35,445 under section 6662(a).  After concessions by
respondent, the amounts remaining in dispute are a deficiency of
approximately $40,000 and a penalty of approximately $8,000.  The
issue for decision is whether petitioner is entitled to any

deductions beyond those conceded by respondent.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Although the Court ordered posttrial briefs, neither party complied with Rule 151(e)(3).  Respondent's brief purported to request findings of fact, but many of the proposed findings recited testimony and described exhibits; some merely incorporated paragraphs from the stipulation, such as "Attached as Exhibit 25-J are petitioner's responses to respondent's Interrogatories.  (Stip. para. 1)".  Petitioner's answering brief did not address the proposed findings of fact or the evidence.  Neither brief served the purpose of assisting the Court in dealing with vague testimony and numerous documents.  See Stringer v. Commissioner, 84 T.C. 693, 705 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986).  The arguments made by petitioner, to the extent that they are intelligible, are refuted by well-established law.  The burden of proof does not affect the outcome of this case, because the evidence of the inherently personal nature of the deductions claimed by petitioner outweighs the implausible testimonial assertions by him and his witnesses.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated herein by this reference.  Petitioner was a resident of Texas at the time that he filed his petition.  During 1996, he was single and had two children, aged 11 and 13.

Petitioner was divorced in 1993.  During 1996, petitioner was obligated to pay child support of $700 a month.  During 1996, petitioner wrote checks to each of his children for $350 per month.

On December 29, 1995, petitioner entered into a residential lease agreement for a two-bedroom condominium located in a residential area on Manor Place in Lake Jackson, Texas (the condominium).  The lease provided that the premises would be occupied and used solely as a single-family dwelling.  During 1996, petitioner, his children, and associates of petitioner used the condominium for residential purposes.  Petitioner paid rent of $10,200, utility expenses of $1,822, and telephone expenses of $1,534 for the condominium.

During 1996, petitioner was a licensed dentist and operated a dental practice in Brazoria, Texas.  On March 19, 1996, petitioner filed a bankruptcy petition.  In the bankruptcy documents, prepared by petitioner on August 27, 1996, petitioner reported that his household furniture, books, pictures, clothing, and personal vehicle, a 1994 Lexus, were located at the

condominium.  He reported that his dental equipment was located at 324 N. Brooks, Brazoria, Texas.

During 1996, petitioner had various personal litigation matters pending.  He also pursued claims of $98, $137, and $105 against three patients.  During 1996, he wrote checks to Dale Morse (Morse) in the amount of $12,656.  Petitioner did not issue a Form 1099 to Morse.

Petitioner's expenditures during 1996 were spread into various categories and deducted on his 1996 Federal individual income tax return, primarily on two Schedules C, Profit or Loss From Business.  Many expenses were mischaracterized.  For example, amounts paid for groceries were deducted as dental practice postage expenses.  All amounts paid on petitioner's credit card were deducted by him.  Many personal expenses of petitioner were deducted.  Petitioner deducted as "contract services" payments made to his children in the amount of his child support obligation.  Petitioner's payments to his children were not reasonable payments for services rendered by the children to petitioner's business.  All of the expenses of the condominium were deducted as dental lab expenses.  All of petitioner's automobile expenses were deducted as business expenses.  Petitioner did not maintain adequate records of business use of the automobile or of the business purpose of travel, meals, or entertainment expense deducted on his return.

OPINION

A Stipulation of Settled Issues, in which respondent agreed to many of petitioner's Schedule C deductions, was followed by a continuance of trial in this case and approximately 17 months of unproductive discovery skirmishes. When respondent declined to concede any additional deductions, and shortly before trial, petitioner sent to the Court a document entitled "Notice of Non-Suit and Withdrawal of Petition", which was filed as Petitioner's Motion to Dismiss and denied. Once petitioner has invoked the jurisdiction of this Court, petitioner may not withdraw or voluntarily dismiss his petition without a decision being entered against him. See sec. 7459(d); Estate of Ming v. Commissioner, 62 T.C. 519, 524 (1974). Although petitioner attempts to portray himself as a victim of unreasonable action by respondent, our observation of petitioner during trial and our review of the record in this case convince us that petitioner's abusive practices and meritless claims are the cause of his difficulties.

We need not accept uncontroverted testimony at face value if it is improbable, unreasonable, or questionable, see, e.g., Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. T.C. Memo. 1970-335, or if the totality of the evidence conveys a different impression. See Diamond Bros. Co. v. Commissioner, 322 F.2d 725, 731 (3d Cir. 1963), affg. T.C.

Memo. 1962-132; Gerald D. Roberts Consultants, Inc. v. Commissioner, T.C. Memo. 1991-490, affd. 981 F.2d 1251 (4th Cir. 1992); Houston v. Commissioner, T.C. Memo. 1983-635. Petitioner's claims to deductions not previously conceded by respondent are based solely on testimony that is not worthy of belief, as set forth below.

Inherently Improbable Claims

Petitioner claims that every expenditure that he made during 1996 was business related. Justifying his deduction of everything that was charged to his credit card, petitioner testified: "So it's very difficult for me to distinguish between a personal expense and business expense when it comes to a credit card. I charge most of my business expenses up on a credit card, and I deduct whatever I have paid for that year, I deduct that." Explaining his deduction of items based on checks payable to cash, he testified: "So personal and business to me are one and the same. It's no use to pay expenses and maintain two bank accounts." When cross-examined about an alleged business loan, he stated: "The dental practice and dental lab is one and the same; it is Michael McCann."

Operating under his untenable premise, petitioner deducted payments to his children, ages 11 and 13 during the year in issue, at the rate of his child support obligation, as dental lab contract services expenses. He deducted the cost of his

apartment and 100 percent of his automobile expenses as allegedly for business use.  He deducted payments for clothing, bedding, and cosmetics purchased at department stores and tickets to entertainment events, claiming that they were gifts to unidentified staff members.  He deducted payments for laundry, sunglasses, a bicycle, "erotic" Playboy tapes, children's videos, and tax protest materials.

No deduction is allowed for personal, living, or family expenses.  Sec. 262.  Many of the items in dispute are inherently personal, and we cannot conclude that they should be deductible on the basis of testimony that is neither corroborated nor credible.

Vague and Unpersuasive Testimony

The testimony that petitioner and his witnesses offered in support of the disputed deductions was fatally vague and unpersuasive.  Petitioner deducted payments made to Morse, a "preparatory legal assistant for a pro se", as accounting and legal expenses.  Morse testified that he did "research on case law * * * to justify some of * * * [petitioner's] positions in collection of * * * [petitioner's] judgments."  Petitioner did not send a Form 1099 to Morse, and neither he nor Morse produced any billings from Morse to petitioner.  The amount that was claimed as a deduction was totally disproportionate to anything in the record relating to attempts to collect from patients.

During the year in issue, petitioner was involved in other legal proceedings of a personal nature, for which there is no record of any expense. The logical inference from the record is that the payments to Morse were personal expenses inappropriately deducted by petitioner.

With respect to a deduction that was claimed for interest on an alleged business loan, petitioner's tax return preparer, Wayne Paul (Paul), testified that he introduced petitioner to the lender, Paladine Combine. The payments claimed to support the deductions were made to Paul, allegedly to be forwarded to Paladine Combine. Paul refused to provide an address, a telephone number, or the name of an individual associated with Paladine Combine. Petitioner testified that he did not fill out a loan application or provide a financial statement to secure the loan. Petitioner produced only a note in which Paladine Combine agreed to pay principal and interest to petitioner.

In support of certain travel expenses that were deducted, petitioner called Joseph D. Gordon (Gordon) to testify. Gordon claimed to have assisted petitioner in "finding funds" and with a personal bankruptcy problem. Petitioner and Gordon traveled to Las Vegas, Nevada, during 1996 and purportedly had a meeting at a casino with a prospective lender. Gordon's testimony was questionable, was lacking in specifics, and was insufficient to support a finding of business purpose for the travel expenses.

When petitioner testified, he merely referred to the items that were disallowed in the Stipulation of Settled Issues and argued about the disallowance. He could not identify the purposes for specific items. For example, he was asked about a payment to TicketMaster for $113 that was charged on his credit card. He testified:

> I believe that would be some tickets that I bought for the staff that work for me as a promotional thing, just for like an incentive that I gave.
>
> I can't tell you exactly what event it was for. I'd have to, you know, go research that and see what occurred when that was purchased.

Petitioner testified further about items on the credit card statements as follows:

> Austria [sic, apparently Australian] Lottery Win Service, Bundall, AU; I'm not sure where that is. That was lottery tickets that were given to staff as promotions.
>
> \* \* \* \* \* \* \*
>
> Strength Footwear of Kenner, Louisiana; I can't say what that is. It probably is tennis shoes for the office staff.
>
> \* \* \* \* \* \* \*
>
> Games Unique, Austin; I'm not sure exactly what that it. I'd have to research that.
>
> \* \* \* \* \* \* \*
>
> \* \* \* Second Opinion Publishing, that would probably be the sunglasses, it looks like, or it may have been books that were--or magazines that were put out for the patients to read. \* \* \*
>
> \* \* \* \* \* \* \*

Tony Lama, I purchased boots there for some of my office staff as promotional incentive.

*      *      *      *      *      *      *

Essiac again, it's an herbal tea.  Wall Street Underground is a publication I put out in the waiting room for people to read.

*      *      *      *      *      *      *

Ticket Connection, ten eleven--I'm not sure what that event would be.  But I'm sure it's tickets I provided to the staff to go to an event.  I couldn't tell you exactly what it was, Your Honor.

*      *      *      *      *      *      *

Interest expense of 6,710, we have been over that.  But it is-$5,040 was for interest payments to Paladine Combine that I mailed to Mr. Wayne Paul and that he forwarded on from there, I know not where.

*      *      *      *      *      *      *

Q    Yes.  There's two receipts from Radio Shack.  You purchased a radio-controlled car crusher and also rechargeable batteries.

A    Uh-huh.

Q    Was that a business expense, also, Mr. McCann?

A    Yes, sir.  I have a toy box for my kids at the office to play with to preoccupy them while their brothers or sisters or whatever are in the dental chair.

*      *      *      *      *      *      *

Q    Yes.  There's a receipt from Petco.  Can you explain what that is?

A    I can't remember offhand.  I could research it for you.

Q    But are you claiming that's also a business expense?

A    Until I determine what it is.  Then I can tell you.  But if it's in here, it's a business expense.

*     *     *     *     *     *     *

A    * * *  And again I state, business and personal are one and the same for me.

Many of the items were charges at restaurants or hotels that were not substantiated as required by section 274.  Petitioner merely reiterated the untenable claim that all of his activities were business related and all of his expenses were tax deductible.

Inconsistent and Contradicted Claims

In responding to discovery, petitioner claimed that the bad debt that was deducted on his tax return was from "work performed on patients who failed to pay."  He testified in Court, however, that the bad debt deduction was attributable to a $9,210 loan that was made in 1992 to a personal friend, who was also a dentist and who died in 1998.

In his responses to discovery, petitioner claimed that only dental lab equipment was located at the Manor Place condominium. He objected to questions relating to the lease and to his residence.  His bankruptcy filings, however, reported that all of his household goods and furniture were at the condominium, and petitioner conceded at trial that he, his children, and his associates spent nights at the condominium.  On his return,

petitioner deducted all of the rent, utilities, and telephone expenses for the condominium.  He did not establish that any part of the condominium was used exclusively for business.  See secs. 262(b), 280A.

Although petitioner's trial testimony quoted above suggested that "research" would allow him to support the business purpose of various items, his answers to interrogatories compel the conclusion that he would not and could not do so.  For example, petitioner had been sent interrogatories in which he responded to questions as follows:

> (1) How many [Tony Lama] boots were purchased.
>
> RESPONSE:  Objection.  Vague.  Assumes facts not in evidence.  Ambiguous.  Requires extensive clarification.
>
> (2) Provide a list of employees that received boots.
>
> RESPONSE:  Same objection.
>
> (3) What type of boots were purchased.
>
> RESPONSE:  Same objection.

> \*     \*     \*     \*     \*     \*     \*

> (i) For the amounts for Ticket Master and Ticket Connection:
>
> (1) How many tickets were purchased.
>
> RESPONSE:  Objection.  Vague.  Ambiguous. Grossly multifarious.  Overbroad.  Burdensome. Impossible to answer based on the way the interrogatory is stated.  Notwithstanding objection, Petitioner only offers the sufficient factual sworn testimony that all

ticket purchases were for business purposes which serves as irrefutable evidence to the court for which the court can only decide the issue in petitioner's favor.

　　*　　　*　　　*　　　*　　　*　　　*　　　*

(3) What were the tickets purchased for.

RESPONSE:  Same objection as for (i)(1).

(j) For the amount for Games Unique:

(1) Provide a list of the names or type of the software purchased and state the quantity for each one named.

RESPONSE:  Objection.  Vague.  Ambiguous. Grossly multifarious.  Overbroad.  Burdensome. Impossible to answer based on the way the interrogatory is stated.  Notwithstanding objection, Petitioner only offers the sufficient factual sworn testimony that all software purchases were for business purposes which serves as irrefutable evidence to the court for which the court can only decide the issue in petitioner's favor.

Section 6662

The description of petitioner's claims and his testimony also support the accuracy-related penalty of section 6662. Petitioner failed to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  See sec. 6662(c).  He did not rely reasonably on his preparer.  Petitioner and his preparer testified that certain types of expenses were deducted under several headings on the tax return.  Paul testified:

But the important issue here is that postage on the general ledger had documented checks and backup support for the $6,966 except for the fact that some of those items may not have been postage.

> It might have been office supplies; it might have been computer expense. It was an error in terms of how it was grouped when the check was disbursed or was recorded into the general ledger.

The totality of the evidence supports the conclusion that petitioner willfully disguised personal expenses as business expenses in order to claim deductions that he knew were improper. He and his preparer ignored applicable statutes, including but not limited to sections 262, 274, 280A, and 6001, and the applicable regulations. The accuracy-related penalty is fully justified on the record in this case.

To reflect respondent's concessions,

<u>Decision will be entered under Rule 155</u>.